# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH W. BUECHEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No: 08-CV-132-JPG |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion to exclude Plaintiff's expert and strike his report filed by Defendant the United States of America. (Doc. 127). Plaintiff Joseph Buechel has responded to the motion. (Doc. 129).

**I.  Facts**

At all relevant times in this case, Mr. Buechel was an inmate at FCI-Greenville located in Greenville, Illinois. While in FCI-Greenville, Mr. Buechel contracted the "MRSA" virus. Mr. Buechel alleges that he contracted the virus while working in the laundry room at FCI-Greenville with his co-worker Joe Hansen. The record indicates that Mr. Hansen suffered from multiple wounds on his back, arm and thigh.  Mr. Buechel alleges that he contracted MRSA from Mr. Hansen when the two were working in the laundry room and passing back and forth tools.

Plaintiff is seeking to present at trial Dr. Robert B. Greifinger as an expert in "the fields correctional health care and infectious diseases in a correctional setting." (Pl.['s] Resp. to Def['s] Mot. at 1). Dr. Greifinger has been a physician for over forty years. He has worked for such entities as the United States Public Health System, 1972-1974, and the New York State Department of Correctional Services, 1989-1995. Currently, Dr. Greifinger is a consultant for

Medical Management and Quality Improvement Services where he consults "on the design management, operations, quality improvement, and utilization management for correctional health care systems."(Def['s] Mot. Ex. A). Dr. Greifinger's report indicates that he believes FCI-Greenville failed to follow their own policies regarding treatment and management of MRSA and other communicable diseases. Further, he indicates that FCI-Greenville has a history of failing to follow these policies, and that these failures were the proximate cause of Mr. Buechel's injuries.

Defendant argues that "1) [Dr. Greifinger] is not qualified to render an expert opinion on infectious diseases and/or what caused plaintiff to have MRSA; 2) his opinions on the standard of medical care in correctional settings, the cause of plaintiff's MRSA infection, and the spread of MRSA in prison is not based on identifiably reliable methodology; and 3) his opinion would not assist the Court in understanding the evidence." *Id.* at 1. Mr. Buechel responds by arguing that 1) Defendant's argument that Dr. Greifinger is not qualified is based on a mischaracterization of the record; 2) Dr. Greifinger's methods are reliable; and 3) that his testimony would help the trier of fact.

## II.     Standard

Admissibility of expert testimony is governed by Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. In *Daubert*, the Supreme Court held that Federal Rule of Evidence 702 did not incorporate the "general acceptance" test set forth in *Frye v. United States*, 54 App. D.C. 46 (D.C. Cir. 1923). Instead, the Court held that Rule 702 required district judges to be gatekeepers for proposed scientific evidence. *Daubert*, 509 U.S. at 589; *see also General Elec. v. Joiner*, 522 U.S. 136, 142 (1997).

In 2000, Rule 702 was amended in response to *Daubert*. *United States v. Conn*, 297 F.3d 548, 555 (7th Cir. 2002). In its current form, it reads as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The Court's role is to conduct a three-part analysis: "'[1] the witness must be qualified "as an expert by knowledge, skill, experience, training, or education, Fed.R.Evid. 702, [2] the expert's reasoning or methodology underlying the testimony must be scientifically reliable, *Daubert*, 509 U.S. at 592-93, 113 S.Ct. 2786; and [3] the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007).

The purpose of the *Daubert* inquiry is to scrutinize proposed expert witness testimony to determine if it has "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" so as to be deemed reliable enough to present to a jury. *Lapsley v. Xtech, Inc.*, 2012 WL 3055865, 1 (7th Cir. 2012) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, (1999)). A Daubert inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy. If the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Id.* (citing *Daubert v. Merrell*

3

*Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993)).

### III.  Analysis

The first issue to address in this case is whether Dr. Greifinger is qualified to testify as an expert. Second, the Court must determine whether his testimony would be reliable, and lastly the Court must determine whether his testimony would assist the trier of fact to understand the evidence or determine a fact in issue in the case. The Court will take each issue in turn.

#### A.  Qualification as an Expert

The first issue to address in this case is whether Dr. Greifinger is qualified to testify as an expert in the fields of correctional health care and infectious diseases in a correctional setting. To determine if an expert is qualified to testify in a particular matter, a court should "consider a proposed expert's full range of practical experience as well as academic or technical training." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).  However, generalized knowledge within an area is not necessarily enough to qualify an expert:

> [A]n expert's qualifications must be within the same technical area as the subject matter of the expert's testimony; in other words, a person with expertise may only testify as to matters within that person's expertise.  Generalized knowledge of a particular subject will not necessarily enable an expert to testify as to a specific subset of the general field of the expert's knowledge.

*Martinez v. Sakurai Graphic Sys. Corp.*, No. 04 C 1274, 2007 WL 2570362, at * 2 (N.D. Ill. Aug. 30, 2007) (citing *O'Conner v. Commonwealth Edison Co.*, 807 F. Supp. 1376, 1390 (C.D. Ill. 1992), *aff'd*, 13 F.3d 1090 (7th Cir. 1994)). The Court must compare the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton v. McCoy*, 593 F.3d 610, 615 (7th Cir. 2010)(citing *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir.1990)).

In this case, Dr. Greifinger has practiced medicine for over forty years with twenty of those years in a correctional setting. Dr. Greifinger has published an article on the management of MRSA outbreaks and countless others on medical treatment in a correctional setting. Also, Defendant cites cases where Dr. Greifinger's ability to testify has been denied. Nevertheless, the Court finds these cases to be distinguishable. In this case, Dr. Greifinger will not testify to the standard of care Mr. Buechel received. He will testify to whether FCI-Greenville followed their standards for treating MRSA and how that affected Mr. Buechel's disease. In conclusion, the Court finds that Dr. Greifinger is qualified to testify as an expert in correctional health and infectious diseases in a correctional setting.

### B.     Reliability of Testimony

The next issue is to determine whether the reasoning and methodology that Dr. Greifinger used to make his determination were reliable. In determining reliability, *Daubert* sets forth the following non-exhaustive list of guideposts: (1) whether the scientific theory can be or has been tested; whether the theory has been subjected to peer review and publication; and (3) whether the theory has been generally accepted in the scientific community. *Gayton*, 593 F.3d at 615, (citing *Daubert,* 509 U.S. at 593-94, 113 S.Ct. 2786). The court should also consider the proposed expert's full range of experience and training in the subject area, as well as the methodology used to arrive at a particular conclusion. *Id*. (citing *Smith v. Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir.2000)).

Here, Dr. Greifinger's theories for the treatment of prisoners have been peer reviewed again and again. He has published over thirty-four articles on medical treatment and infectious diseases in prisons. Further, he has the experience and training in correctional medicine and

5

infectious diseases. As a result, the Court finds that the reasoning and methodology Dr. Greifinger used to develop his opinion is reliable.

### C. Relevance of Dr. Greifinger's Testimony

The next issue is whether the Dr. Greifinger's opinion would assist the trier of fact in making their determination. For an expert's testimony to qualify as relevant under Rule 702 "it must assist the jury in determining any fact at issue in the case." *Smith*, 215 F.3d at 719-20. Further, under Rule 704(a) an expert may testify to the ultimate issue in a case." *Id*. (citing *Walker v. Soo Line R. Co.*, 208 F.3d 581, 587 (7th Cir. 2000)). "The question of whether the expert is credible or whether his ...theories are correct given the circumstances of a particular case is a factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based." *Walker*, 208 F.3d at 589-90. It is not the trial court's role to decide whether an expert's opinion is correct. The trial court is limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound. *Id*. (citing *Kumho Tire Co., Ltd. v. Carmichael, etc., et al.*, 526 U.S. at 159, 119 S.Ct. 1167 (Scalia, J., concurring)

In this case, Dr. Greifinger offers an opinion on the main issue in this case. The arguments that Defendant makes regarding Dr. Greifinger's testimony go directly to the credibility of his opinion. Dr. Greifinger reviewed all the documents in this case and has come to an opinion of the cause of Mr. Buechel's disease. It will be for the jury to decide whether that opinion is correct.

### IV. Conclusion

Therefore, the Court denies Defendant's motion to exclude Dr. Greifinger and his report

and denies the Government's request for a *Daubert* hearing.

**IT IS SO ORDERED.**
**DATED:  August 2, 2012**

                                              s/ J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **DISTRICT JUDGE**